UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALLEN HASSAN, MD, JD; and
JOHN WOLFGRAM, JD and
ROES 1-n,

                              NO. CIV. S-12-1933 LKK/KJN

      Plaintiffs,

   v.

                                O R D E R

THE GOVERNMENT OF THE UNITED
STATES; THE SECRETARY OF
TREASURY, DEPT. OF HEALTH,
MEDICARE; DEPT. OF HOMELAND
SECURITY, CORELOGIC CREDCO,
CALIFORNIA HIGHWAY PATROL;
CHP OFFICER COONEY; MEDICAL
BOARD OF CALIFORNIA and
DOES 1 thru 100,

      Defendants.
_____/

    Dr. Allen Clarence Hassan and John Wolfgram are the named

plaintiffs in this civil rights action. Hassan and Wolfgram allege

causes of action under the Americans with Disabilities Act, 42

U.S.C. §§ 1983 and 1985(3), and the First, Fourth, Fifth,

Thirteenth, and Fourteenth Amendments to the U.S. Constitution.

    Defendants State of California (acting by and through the

California Highway Patrol), Medical Board of California, California

1

1   Attorney General Kamala Harris, Kurt Heppler, Linda Whitney, Sonia

2   Huestis, Monica Peretto, and Mark Loomis together move to dismiss

3   the complaint under Fed. R. Civ. P. 12(b)(6).

4      Defendant Corelogic Credco also moves to dismiss under Fed.

5   R. Civ. P. 12(b)(6).

6      Defendant Dignity Health d/b/a Methodist Hospital of

7   Sacramento moves to dismiss under Fed. R. Civ. P. 12(b)(6) and

8   12(b)(1), or in the alternative, moves for a more definite

9   statement under Fed. R. Civ. P. 12(e).

10      For the reasons set forth herein, the complaint will be

11   dismissed with prejudice as to all defendants.

12 **I. FACTS**

13      The facts below are set forth in the Complaint (ECF No. 1),

14   the Amendment to the Complaint (ECF No. 8), and the exhibits

15   thereto. The allegations are taken as true for purposes of this

16   motion only.

17     **A. Plaintiff Hassan**

18      Hassan was born in Iowa in 1936, to a mother who was an

19   American citizen, and a father who was born in Palestine. He served

20   in the U.S. Marine Corps, from which he received an honorable

21   discharge, and holds the rank of U.S. Coast Guard Commander

22   (Retired). He is a graduate of the Iowa State University Medical

23   School, and is a practicing medical doctor licensed by the State

24   of California. He also holds Juris Doctor and Veterinary Science

25   degrees. (Complaint 2.)

26   ////

1      **B. Traffic incident**

2          In 2002, while on his way to see a sick patient, Hassan was

3      stopped for speeding by California Highway Patrol officer Patrick

4      Cooney. (Complaint 6, 20.) An altercation ensued. Hassan alleges

5      that he was badly beaten by Cooney, suffering permanent injury,

6      disability, and emotional distress (Complaint 9, 15.) Hassan was

7      charged with, and found guilty of, resisting arrest and assaulting

8      Cooney.[1]

9      **C. Effect on Hassan's practice & Medicare issues**

10         According to plaintiffs, due to the incident with Cooney,

11     Hassan's legal and medical practice began to suffer, moving from

12     profitability to loss. (Complaint 15.) Then, in April 2011, a back

13     injury Hassan sustained in the Cooney incident flared up and

14     rendered him largely bedridden and on pain medication. In December

15     2011, he underwent back surgery and began to recover. (Complaint

16     15-16.) In the interval between April and December, several

17     trained, experienced employees departed his practice, including a

18     Medicare billing specialist who took Hassan's billing records when

19     she left. Hassan had to replace these employees with untrained,

20     inexperienced workers who, among other things, failed to timely

21     bill Medicare and other insurance providers. (Complaint 16.)

22         Beginning in the fall of 2011, Medicare stopped reimbursing

23     _____

24         [1] This incident is discussed at greater length in <u>Hassan v.
       Morawcznki</u>, case no. 05-244, 2009 WL 2407694 (E.D.Cal. Aug. 4,
       2009), <u>Hassan v. Morawcznki</u>, 405 Fed.Appx. 129 (9th Cir. 2010),

25     <u>cert. denied</u>, 132 S.Ct. 245 (2011), and <u>Hassan v. State of
       California</u>, case no. C057202, 2009 WL 1600457 (Cal.Ct.App. June 9,

26     2009).

1   Hassan. Plaintiffs claim that Medicare failed to explain its
2   termination of payments, and that the reasons remain unclear to
3   this day. The halt in Medicare payments resulted in significant
4   cash flow problems, as Hassan had provided months of unreimbursed
5   services to Medicare-eligible patients. At one point, Hassan
6   believed he had resolved the issue and would receive back payments,
7   but in July 2012, Medicare denied him reimbursements, totaling
8   $200,000, for five months of service. (Complaint 16.).

9       **D. Credit report**

10      Defendant Corelogic Credco ("Corelogic") is a credit reporting
11  agency that produces credit reports for financial institutions. It
12  advertises that its Credco ProScan Program obtains information from
13  the U.S. Department of the Treasury's Office of Foreign Asset
14  Control. (Complaint 5.)

15      Attached as an exhibit to the Complaint is a four-page
16  document that appears to be a consumer credit report regarding
17  Hassan. Dated 12/27/2010, it is entitled "Credco ProScan OFAC
18  Report" and features Corelogic's logo.[2] ("Corelogic credit report,"
19  ECF no. 1-1.) Under the heading "OFAC SEARCH RESULTS," it lists one
20  organization and eight individuals, each of which has a name or

21  _____

22      [2] On a motion to dismiss, the court may consider material
    which is part of the complaint. <u>Gumataotao v. Dir. of Dep't of</u>
23  <u>Revenue & Taxation</u>, 236 F.3d 1077, 1083 (9th Cir. 2001). A document
    is part of the complaint if the complaint specifically refers to
24  or relies on the document and no party questions its authenticity.
    <u>Lapidus v. Hecht</u>, 232 F.3d 679, 682 (9th Cir. 2000). Consideration
25  of such a document does not convert a motion to dismiss into a
    motion for summary judgment. <u>United States v. Ritchie</u>, 342 F.3d
26  903, 908 (9th Cir. 2003).

1 alias containing the name "Hassan"; one of these individuals is

2 identified as a half-brother of Saddam Hussein. (Id.)

3     Plaintiffs describe the Corelogic credit report as a

4 blacklist. (Complaint 5, 19.)

5 **E. Medical Board & Dignity Health**

6     Plaintiffs' allegations regarding defendant California Medical

7 Board are difficult to parse. It appears that Hassan defended a Dr.

8 Lee-Tzu Lin in a malpractice inquiry conducted by defendant Medical

9 Board of California ("Medical Board"). The malpractice charges were

10 brought by defendant Dignity Health. (Amendment to Complaint at 6;

11 Letter from Hassan to Medical Board, ECF no. 8-2.) While the

12 Medical Board dismissed the case against Dr. Lin, it refused to

13 timely provide Lin with its findings and other information, while

14 providing this information to Dignity Health. (Id.) Lacking this

15 information, Dr. Lin was prejudiced in an investigation and/or

16 hearing before a body known as the Methodist Judicial Review

17 Committee, apparently run by Dignity Health. (Amendment to

18 Complaint 5-6, 11.)

19     Dignity Health is named as a defendant for its actions against

20 Dr. Lin and Hassan in connection with this investigation and/or

21 hearing. Dignity Health is alleged to have (1) obtained and used

22 advance information from the Medical Board "to defraud doctors out

23 of fair hearings"; and (2) conspired in an attempt to injure Hassan

24 "by reason of the increased financial and emotional costs of

25 defending against wholly made up charges in a system that is rigged

26 in favor of the hospital." Plaintiffs also charge that Dr. Lin was

1   denied a fair hearing due to Methodist Hospital of Sacramento's
2   bylaws. (Amendment to Complaint 10-11.)

3       Defendants Monica Peretto and Mark Loomis are Medical Board
4   staff who allegedly failed to timely provide Lin with the
5   information in question. (Complaint 23; Amendment to Complaint 6.)
6   Defendant Linda Whitney is allegedly the Executive Director of the
7   Medical Board; she is cc'ed on a letter from defendant Kurt Heppler
8   to plaintiff Wolgram, and is accused of instructing Heppler "to
9   create unjust cause to deny information sought" by Lin. (Amendment
10  to Complaint 8.) Heppler, in turn, is an attorney with the Legal
11  Affairs Division of the California Department of Consumer Affairs
12  who "unreasonably denied and prevented Plaintiffs [*sic*] attempt to
13  get an investigation" into the Medical Board's delay and/or refusal
14  to provide information. (Amendment to Complaint 6.) Defendant Sonia
15  Huestis is allegedly the Director of the Department of Consumer
16  Affairs; she gave plaintiffs the "runaround" as well. (Amendment
17  to Complaint 7, 8.)

18      **F. Alleged conspiracy**

19      According to plaintiffs, the thread that ties these disparate
20  incidents — the traffic incident, the denial of payment by
21  Medicare, the Corelogic credit report, and the withholding of
22  information by the Medical Board — together are blacklists which
23  include Hassan, based in part on his name and partial Arab
24  ancestry. (Complaint 2, 5.) There is in fact a broad network of
25  federal and state terrorist blacklists. Per plaintiffs, this
26  blacklisting "is a code to all co-defendants herein and all within

6

the blacklist organization proclaiming: 'Defendant Dr. Hassan is an enemy of the Government who has no protection under the Constitution of the United States: Treat him as such.'" (Complaint 5.) According to Hassan, his presence on these blacklists had the following effects:

- CHP officers were instructed that if they detained Hassan for any reason, they were to bring him into custody, and if there were no lawful reason for doing so, to create one. Information about the blacklist was withheld from Hassan, which prejudiced his criminal prosecution. (Complaint 5.)

- Medicare has refused to pay Hassan, either because he is blacklisted, or because his financial struggles as a result of blacklisting have rendered him unable to meet Medicare's requirements. (Complaint 17.)

- The Corelogic credit report holds Hassan out as being "reasonably suspected of" treason and instructs that he be treated as such by persons who see the list. (Complaint 8.)

- The Medical Board "propagated false rumors to the effect that Plaintiff is a treasonous person and aided, abetted and in some manner caused or contributed to the blacklisting of [Hassan] and or honored and co-operated in the said blacklisting." (Complaint 6.)

Plaintiffs name the federal government, the Secretary of the Treasury, and the U.S. Department of Homeland Security as

1  additional  defendants  for  their  participation  in  Hassan's

2  blacklisting.

3      **G. Wolfgram's participation as a named plaintiff**

4      Nearly all of the preceding allegations concern plaintiff

5  Hassan. Wolfgram is included as a named plaintiff as an "associate

6  of Dr. Hassan within the ambit of the right 'Peaceably to assemble,

7  and to petition the Government for Redress of Grievances' clause

8  of the First Amendment." The Complaint alleges that Wolfgram has

9  "a lawfully cognizable interest in Dr. Hassan's well being, that

10 violations of his Constitutional Rights be justly redressed as well

11 as a lawful interest that government provide effective and just

12 redress of the People's grievances with government." (Complaint 3.)

13     Wolfgram is a former U.S. Marine and a veteran of the Vietnam

14 War. Wolfgram is being treated by Hassan for service-connected

15 disabilities; these disabilities, in turn, are allegedly what led

16 the State Bar of California to place Wolfgram on inactive status.[3]

17 Wolfgram's specific interest in Hassan's well-being appears to be

18 that, due to Hassan's training as a physician, experiences as a

19 U.S. Marine, certification to treat veterans for psychiatric

20 illness, and qualifications as an attorney, he is "virtually the

21 only person on earth capable of effectively evaluating, treating,

22 and restoring Wolfgram to law practice. . . ." (Complaint 3.)

23

_____

24     [3] In 1993, Wolfgram, an attorney, was involuntarily enrolled
inactive by the State Bar of California under Cal. Bus. & Prof.
25 Code section 6007(b)(3). See Matter of John E. Wolfgram, No. 90-TT-
16955, 1995 WL 506002 (Review Dept. of the State Bar Court of
26 California, Aug. 22, 1995).

**H. Remaining defendants**

Plaintiffs have named the California Attorney General as a defendant because she is representing defendants (the Medical Board, the CHP, and individual defendants Heppler, Huestis, Loomis, Peretto, and Whitney) "regardless of the legality of their cause." (Amendment to Complaint 3.) Plaintiffs claim that, by so doing, the Attorney General is violating her duty under the California State Constitution "to see that the laws of the State are uniformy and adequately enforced...." (Id., <u>quoting</u> Cal. Const. art. V, § 13) and also violating the Fourteenth Amendment to the U.S. Constitution.

**II. CAUSES OF ACTION PLEADED**

Plaintiffs' first cause of action alleges the following Constitutional violations by the federal government and the U.S. Treasury:

- Deprivation of Hassan's First Amendment right to use his father's last name without being linked to the network of terorist blacklists.

- Unlawful search and seizure under the Fourth Amendment because "the publication of implications of treason is the creation of probable cause by or for any government agency or financial institution to invade and violate any and all of [Hassan's] constitutionally protected rights...."

- Deprivation of Fifth Amendment due process rights by allowing agencies to "strike [at Hassan based on the

blacklists] without notice as to what is causing the financial and punishing injury or why."

- Taking of private property without just compensation in violation of the Fifth Amendment because, by failing to take precautions to prevent false positives on the blacklists, the government shifts the costs of the so-called "War on Terror" onto individuals named on these blacklists.

- Involuntary servitude in violation of the Thirteenth Amendment because, due to blacklisting, Hassan is arbitrarily subject to the whims of others. One example of involuntary servitude is the $200,000 in payments withheld by Medicare.

- Violations of 42 U.S.C. §§ 1983, 1985, and the Fourteenth Amendment due to blacklisting on the basis of race.

(Complaint 8-15.)

Plaintiffs' second cause of action alleges that the federal government and the U.S. Department of Health and Human Services have withheld Medicare reimbursements from Hassan because of his presence on terrorist blacklists, thereby violating the Due Process and Takings clauses of the Fifth Amendment, the Thirteenth Amendment, and the Fourteenth Amendment. In addition, Hassan seeks an ADA accommodation against Medicare and "an order for payment notwithstanding non prejudicial irregularities in the billing process caused by the near collapses of his businesses which was

1   itself caused by the disability and injury inflicted 10 years ago

2   by Officer Cooney." (Complaint 15-18.)

3       Plaintiffs' third cause of action alleges that the federal

4   government and the U.S. Department of Homeland Security "are

5   conspirators and purveyors of the [Exhibit 1 blacklist] or similar

6   blacklists passed to state and federal law enforcement agencies and

7   banking and other institutions," and have failed to remove Hassan

8   from these blacklists despite having "performed an 'investigation'

9   and found no reasonable cause for blacklisting plaintiff," thereby

10  violating the First, Fourth, Fifth, Thirteenth, and Fourteenth

11  Amendments, as well as 42 U.S.C. §§ 1983 and 1985(3). (Complaint

12  18.)

13      Plaintiffs' fourth cause of action alleges that Corelogic

14  "conspired with [the federal government] by propagating the

15  [Exhibit 1] blacklist," presumably in violation of 42 U.S.C.

16  § 1985(3). (Complaint 19-20.)

17      Plaintiffs' fifth cause of action concerns the injuries Hassan

18  suffered in the incident with Officer Cooney and Hassan's

19  subsequent prosecution; it alleges a "federally

20  approved...conspiracy to blacklist, terrorize, assault and batter

21  and to conceal information [the conspirators] knew to be highly

22  relevant to the defense and to cover-up the false criminal

23  prosecution of plaintiff over a ten year period," thereby violating

24  the First, Fourth, Fifth, and Thirteenth Amendments, as well as 42

25  U.S.C. §§ 1983 and 1985(3). (Complaint 20-21.)

26      Plaintiffs' sixth cause of action alleges a conspiracy

11

1   involving the Medical Board, its officers and agents, and perhaps

2   Dignity Health to blacklist Hassan "under the color of state

3   authority in violation of the Fourteenth Amendment to the United

4   States Constitution[,] 42 U.S.C. § 1983 and 42 U.S.C. § 1985(3)."

5   (Complaint 21-24; Amendment to Complaint 2, 6-11.)

6       Plaintiffs' seventh cause of action alleges that Hassan's

7   blacklisting was designed to, and did in fact, lead to his injury,

8   resulting in his disability within the meaning of the Americans

9   with Disabilities Act. Plaintiffs further allege that Doe

10  defendants have refused to make ADA accommodations for Hassan

11  because of his presence on the blacklist. (Complaint 24-25.)

12      Finally, plaintiffs filed an ex parte motion to stay

13  defendants' motions to dismiss until the federal defendants filed

14  a responsive pleading (ECF No. 24); the court denied this

15  application by order dated November 13, 2012. (ECF No. 34.)

16  **III. STANDARD ON MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(6)**

17      A dismissal motion under Fed. R. Civ. P. 12(b)(6)[4] challenges

18  a complaint's compliance with the federal pleading requirements.

19  Under Rule 8(a)(2), a pleading must contain a "short and plain

20  statement of the claim showing that the pleader is entitled to

21  relief." The complaint must give the defendant "'fair notice of

22  what the ... claim is and the grounds upon which it rests.'" Bell

23  Atlantic v. Twombly, 550 U.S. 544, 555 (2007), quoting Conley v.

24  Gibson, 355 U.S. 41, 47 (1957).

25  _____

26      [4] Hereinafter, the term "Rule" refers to the applicable
    Federal Rule of Civil Procedure.

To meet this requirement, the complaint must be supported by factual allegations. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S. Ct. 1937 (2009). Moreover, this court "must accept as true all of the factual allegations contained in the complaint." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007).[5]

"While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth. <u>Iqbal</u>, 556 U.S. at 678. <u>Iqbal</u> and <u>Twombly</u> therefore prescribe a two-step process for evaluation of motions to dismiss. The court first identifies the non-conclusory factual allegations, and then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise to an entitlement to relief." <u>Iqbal</u>, 556 U.S. at 664.

"Plausibility," as it is used in <u>Twombly</u> and <u>Iqbal</u>, does not refer to the likelihood that a pleader will succeed in proving the allegations. Instead, it refers to whether the non-conclusory factual allegations, when assumed to be true, "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 663, 129 S. Ct. at

_____

[5] Citing <u>Twombly</u>, 556 U.S. at 555-56, <u>Neitzke v. Williams</u>, 490 U.S. 319, 327 (1989) ("[w]hat Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations"), and <u>Scheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974) ("it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test" under Rule 12(b)(6)).

1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557).[6] A complaint may fail to show a right to relief either by lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

**IV. ANALYSIS**

**A. Wolfgram's lack of standing**

Article III standing requires an injury in fact that is fairly traceable to the challenged conduct and has some likelihood of redressability. Lujan v. Defenders of Wildlife, 504 U.S. 555, 556–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Wolfgram lacks standing to proceed as a plaintiff in this action. To the extent that Wolfgram is proceeding as a concerned citizen seeking to

---

[6] Twombly imposed an apparently-new "plausibility" gloss on the previously well-known Rule 8(a) standard, and retired the long-established "no set of Facts" standard of Conley v. Gibson, 355 U.S. 41 (1957), although it did not overrule that case outright. See Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (the Twombly Court "cautioned that it was not outright overruling Conley ...," although it was retiring the "no set of Facts" language from Conley). The Ninth Circuit has acknowledged the difficulty of applying the resulting standard, given the "perplexing" mix of standards the Supreme Court has applied in recent cases. See Starr v. Baca, 652 F.3d 1202, 1215 (9th Cir. 2011) (comparing the Court's application of the "original, more lenient version of Rule 8(a)" in Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002) and Erickson v. Pardus, 551 U.S. 89 (2007) (per curiam), with the seemingly "higher pleading standard" in Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336 (2005), Twombly and Iqbal), rehearing en banc denied, 659 F.3d 850 (October 5, 2011). See also Cook v. Brewer, 637 F.3d 1002, 1004 (9th Cir. 2011) (applying the "no set of Facts" standard to a Section 1983 case).

1  expose and halt violations of the U.S. Constitution, rather than

2  a person who has suffered concrete injury, he is barred from

3  bringing this action by the Supreme Court's holding in <u>Valley Forge</u>

4  <u>Christian College v. Americans United for Separation of Church &</u>

5  <u>State</u>:

6          [T]he Art. III requirements of standing are not
            satisfied by the abstract injury in nonobservance of the
7          Constitution asserted by citizens. This Court repeatedly
            has rejected claims of standing predicated on the right,
8          possessed by every citizen, to require that the
            Government be administered according to law. Such claims
9          amount to little more than attempts to employ a federal
            court as a forum in which to air generalized grievances
10         about the conduct of government.

11 454 U.S. 464, 482-483 (internal citations and quotations omitted).

12         Plaintiffs also allege that Hassan is the only person who can

13 treat Wolfgram, and due to Hassan's injuries detailed in the

14 Complaint, Wolfgram has not received the treatment he requires.

15 "[C]onstitutional limitations [to standing] require a litigant to

16 allege (1) a threatened or actual distinct and palpable injury to

17 [himself]; (2) a fairly traceable causal connection between the

18 alleged injury and the...challenged conduct; and (3) a substantial

19 likelihood that the requested relief will redress or prevent the

20 injury." <u>Fleck and Assocs., Inc. v. Phoenix</u>, 471 F.3d 1100, 1104

21 (9th Cir. 2006) (internal citations and quotations omitted). Even

22 assuming that Hassan's inability to treat Wolfgram meets the first

23 prong's requirements of actual injury, the complaint fails to

24 allege facts sufficient to meet the second and third prongs. The

25 complaint does not spell out a "fairly traceable" causal connection

26 between the alleged blacklisting and Wolfgram's inadequate

treatment. Any connection is extraordinarily tenuous, because even if none of the misfortunes set out in the complaint had befallen Hassan, there is no guarantee that he would have been able to successfully treat Wolfgram. Similarly, even if plaintiffs were to prevail in this action, there is nothing to suggest a "substantial likelihood" that, as a result, Hassan would then be able to treat Wolfgram with any efficacy. Monetary damages seem to be a question entirely apart from Hassan's ability to effectively treat Wolfgram.

Accordingly, Wolfgram must be dismissed as a plaintiff under Rule 12(b)(1) for lack of Article III standing. <u>Maya v. Centex Corp.</u>, 658 F.3d 1060, 1067 (9th Cir. 2011) ("[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under [Rule] 12(b)(1)").

**B. Conspiracy Allegations**

**1. OFAC List**

According to Hassan, the fact that the Corelogic credit report associates his name with those of organizations and individuals on a list published by the U.S. Department of the Treasury's Office of Foreign Asset Control ("OFAC") is evidence of a secret race-based conspiracy against him.

Hassan appears to misunderstand the nature of the OFAC list associated with his name, and the use of this list by credit reporting agencies such as Corelogic. OFAC is an agency primarily concerned with implementing the United States government's economic and trade sanctions regime. <u>Cortez v. Trans Union, LLC</u>, 617 F.3d 688, 696 (3rd Cir. 2010). The formal title of the list in question

16

1  is the "Specially Designated Nationals & Blocked Persons List"

2  ("SDN List"). The SDN List sets forth "a list of blocked persons,

3  blocked vessels, specially designated nationals, specially

4  designated terrorists, specially designated global terrorists,

5  foreign terrorist organizations, and specially designated narcotics

6  traffickers whose property and interests in property are blocked

7  pursuant to the various economic sanctions programs administered

8  by OFAC." 31 C.F.R. Ch. V, App. A. A series of federal statutes,

9  regulations, and executive orders require OFAC to designate

10 individuals and organizations for membership on the SDN List. See,

11 e.g., 8 U.S.C. § 1189 (Designation of Foreign Terrorist

12 Organizations); 31 C.F.R. § 536.312 (Specially Designated Narcotics

13 Trafficker); Exec. Order No. 13382, 70 FR 38567 (June 28, 2005)

14 (Blocking Property of Weapons of Mass Destruction Proliferators and

15 Their Supporters). "Individuals and businesses in the United States

16 are generally prohibited from conducting any business with anyone

17 named on OFAC's SDN List." Id. at 697.

18      The SDN List is no secret; it is publicly available on the

19 Internet in a variety of formats at http://www.treasury.gov/sdn

20 (last visited November 9, 2012).

21      While the SDN List antedates the attacks of September 11,

22 2011, prohibitions on conducting business with those on the SDN

23 List were increased by the Uniting and Strengthening America by

24 Providing Appropriate Tools Required to Intercept and Obstruct

25 Terrorism Act of 2001 ("USA PATRIOT Act"), 115 Stat. 272 (Oct. 26,

26 2001). The applicable provisions of the USA PATRIOT Act call for

the Treasury Department to promulgate regulations that "require financial institutions to implement...reasonable procedures for...consulting lists of known or suspected terrorists or terrorist organizations provided to the financial institution by any government agency to determine whether a person seeking to open an account appears on any such list." 31 U.S.C. § 5318(l)(2). Under the resulting regulations, "[i]n most cases, it is unlawful to extend credit to a person whose name is on OFAC's SDN List." Cortez, 617 F.3d at 701.

The emergence of products like the Corelogic credit report listing Hassan's name are the result of these regulations. As explained on OFAC's website:

> Credit bureaus and agencies in particular have adopted new measures to ensure compliance with OFAC regulations. Before issuing a credit report, they use special "interdiction" software developed by the private sector to determine if a credit applicant is on the SDN list. This software matches the credit applicant's name and other information to the individuals on the SDN list. If there is a potential match, the credit bureaus are placing a "red flag" or alert on the report. This does not necessarily mean that someone is illegally using your social security number or that you have bad credit. It is merely a reminder to the person checking your credit that he or she should verify whether you are the individual on the SDN list by comparing your information to the OFAC information. If you are not the individual on the SDN list, the person checking your credit should disregard the OFAC alert, and there is no need to contact OFAC. However, if the person checking your credit believes you are the person on the SDN list, then he or she should call the OFAC Hotline to verify and report it.

"What Is This OFAC Information On My Credit Report," http://www.treasury.gov/resource-center/faqs/Sanctions/Pages/ answer.aspx (last visited on December 4, 2012). In other words,

18

1   Hassan's name was not associated with suspected terrorists and

2   terrorist organizations due to a secret blacklist, but rather by

3   credit bureau software that erroneously matched his name with names

4   on a publicly-available list promulgated by the U.S. Government.

5        There is little doubt that the credit bureaus' software is

6   overinclusive and leads to false positives. But, as further

7   explained on OFAC's website, one does have recourse if one's name

8   is erroneously associated with the OFAC SDN List:

> A consumer has the right under the Fair Credit Reporting
> Act (FCRA), 15 U.S.C. 1681 *et seq.*, to request the
> removal of incorrect information on his/her credit
> report. To accomplish this, consumers should contact the
> credit reporting agency or bureau that issued the credit
> report. For more information on consumers' rights under
> the FCRA, visit the Federal Trade Commission's website
> at http://www.ftc.gov/os/statutes/fcrajump.shtm

14   "How Can I Get The OFAC Alert Off My Credit Report,"

15   http://www.treasury.gov/resource-center/faqs/Sanctions/Pages/

16   answer.aspx (last visited on December 4, 2012). There are even

17   procedures to have one's name removed from the SDN List itself,

18   though these procedures are irrelevant to Hassan himself.[7] See 31

19   C.F.R. § 501.807 (Procedures Governing Delisting From the Specially

20   Designated Nationals and Blocked Persons List.).

21        Cases brought under the Fair Credit Reporting Act have

22   affirmed consumers' rights to have incorrect references to the SDN

23   List removed from their credit reports. In a lengthy, searching

24   opinion, the Third Circuit recently held that credit report

---

26   [7] Inspection shows that there is no "Allen Hassan" on the SDN
     List.

agencies that provide information to creditors regarding consumers'
presence, or potential presence, on the SDN List are subject to the
requirements of the FCRA. See Cortez, 617 F.3d at 688 (upholding
$150,000 damage award based on credit reporting agency's failure
"to follow reasonable procedures to assure maximum possible
accuracy" of the OFAC SDN-related information in a consumer's
credit report); see also Ramirez v. Trans Union, LLC, __ F.Supp.2d
__, 2012 WL 4954120 (N.D.Cal. 2012) (denying motion for judgment
on the pleadings which alleged that credit reporting agency, which
erroneously included OFAC SDN-related information on plaintiff's
credit report, failed to comply with the FCRA and the California
Consumer Credit Reporting Agencies Act).

Turning to plaintiffs' allegations regarding the Corelogic
credit report, it is evident that they do not meet federal pleading
standards. Under the two-step analysis prescribed by Iqbal, 556
U.S. at 662, the court must begin by identifying the well-pleaded
factual allegations. Plaintiffs allege the following regarding the
Corelogic credit report:

- The Corelogic credit report "is a racist terrorist
  blacklisting of Plaintiff. The said blacklisting is a
  code to all co-defendants herein and all within the
  blacklist organization proclaiming: 'Defendant
  Dr. Hassan is an enemy of the Government who has no
  protection under the [U.S. Constitution]: Treat him as
  such.'" (Complaint 5.)

- "Does 1-n are local, state or federal Government

agencies or agents, or of public or private institutions and agents thereof who in some manner acted on or caused other to act on the [Corelogic] Report to Plaintiffs' detriment or to refrain from acting to Plaintiffs' benefit...or in some way assembled or propagated the false linking[] of Plaintiff to terrorism or terrorists." (Complaint 5.)

• The Corelogic credit report "is part of a broad network of US and State terrorist blacklists under color of being 'anti-terrorist' publications that have...caused beatings by CHP Officer Cooney...and the almost total destruction of Plaintiff's medical/legal practice forcing him into bankruptcy." (Complaint 9.)

• "Medicare won't pay Plaintiff because it does not have to and it does not have to because Plaintiff is blacklisted for Treason and has no effective remedy...or Plaintiff is[,] because of the blacklist, too financially stressed to meet Medicare bureaucratic requirements...." (Complaint 17.)

• "The Department of Homeland Security and Doe officers and agents therein are conspirators and purveyors of the blacklist, herein Exhibit 1 [i.e., the Corelogic credit report]." (Complaint 18.)

• Corelogic "became the willing vehicle by which rogue forces of the federal government could and did wage war...by falsely identifying citizens as terrorists

21

1               without meeting constitutional requirements as liable or

2               suspected to be liable for treason against the United

3               States, knowing and intending that said citizens have no

4               legal recourse...." (Complaint 19.)

5     •    "[T]he CHP has/had a list of terrorist suspects which is

6               derived from the same sources as [the Corelogic credit

7               report]." When Officer Cooney stopped Hassan, "he was

8               informed of the alleged terrorist connection and

9               instructed to find or create a reason to bring [Hassan]

10              in. Whereupon, [he attacked Hassan.]" (Complaint 20.)

11 Taking the factual content of these allegations as true, rather

12 than "unrealistic or nonsensical," _Iqbal_, 556 U.S. at 681, the

13 court must, at the second step of the _Iqbal_ analysis, determine

14 whether "they plausibly give an entitlement to relief." _Id._ at 679.

15     It is evident that these allegations lack the required facial

16 plausibility. "A claim has facial plausibility when the plaintiff

17 pleads factual content that allows the court to draw the reasonable

18 inference that the defendant is liable for the misconduct alleged."

19 _Id._ at 678. The court must "draw on its judicial experience and

20 common sense" in making this determination. _Id._ While Hassan

21 repeatedly characterizes the Corelogic credit report as a secret

22 terrorist blacklist, there is nothing secret about the SDN List,

23 the laws that require financial institutions to use the SDN List,

24 and credit reporting agencies' erroneous linking of innocent

25 individuals' names to names on the SDN List. While it was

26 understandably distressing for Hassan to find himself linked to

suspected terrorists on his credit report, the court cannot "draw
the reasonable inference," id., from this error the vast conspiracy
Hassan posits in his complaint. Simply put, Hasan has failed to put
forward facts that could lead the court to find more than "a sheer
possibility that [the defendants have] acted unlawfully." Id. at
663.

Hassan's failures in pleading are especially evident given
that he has alleged a conspiracy among defendants to use the SDN
List to injure him. Conspiracy claims under Section 1983 require
proof of "an agreement or meeting of the minds to violate
constitutional rights." Franklin v. Fox, 312 F.3d 423, 441 (9th
Cir. 2001) (internal quotations and citations omitted). "'To be
liable, each participant in the conspiracy need not know the exact
details of the plan, but each participant must at least share the
common objective of the conspiracy.'" Id. at 441 (quoting United
Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541
(9th Cir. 1989)). Hassan makes conclusory allegations about the
existence of a conspiracy, but fails to plead specific facts
concerning any "agreement or meeting of the minds" between the
defendants. He fails to plead any specific facts regarding their
shared "common objective" beyond repeated allegations that, e.g.,
the "blacklist conspiracy has caused physical, emotional[,]
mental...and financial hardship and disability as [it] was designed
and intended to." (Complaint 24.) Ultimately, the complaint lacks
a cognizable legal theory upon which relief can be granted.
Balistreri, 901 F.2d at 699.

1        Accordingly, to the extent that plaintiffs' causes of action

2   rest on allegations that the federal government maintains a secret

3   blacklist  containing  plaintiff's  name  which  Corelogic  has

4   published, and on which other alleged co-conspirators have relied

5   to  plaintiff's  detriment,  they  must  be  dismissed  under  Rule

6   12(b)(6) for failure to state a claim upon which relief can be

7   granted.

8       **2. Other terrorist blacklists**

9        To  the  extent  that  Hassan's  causes  of  action  rest  on  the

10  existence  of  secret  terrorist  blacklists  other  than  the  OFAC  SDN

11  List, they must be dismissed under the doctrine of substantiality.

12  "[F]ederal  courts  are  without  power  to  entertain  claims  otherwise

13  within  their  jurisdiction  if  they  are  so  attenuated  and

14  unsubstantial  as  to  be  absolutely  devoid  of  merit,  wholly

15  insubstantial,  obviously  frivolous,  plainly  unsubstantial,  or  no

16  longer  open  to  discussion." Hagans v. Levine, 415 U.S. 528, 536-

17  537, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974) (internal quotations and

18  citations  omitted).  "Under  the  substantiality  doctrine,  the

19  district  court  lacks  jurisdiction  when  the  question  presented  is

20  too insubstantial to consider." Cook v. Peter Kiewit Sons Co., 775

21  F.2d 1030, 1035 (9th Cir. 1985) (citations omitted).

22       Simply  put,  Hassan's  allegations  of  secret  terrorist

23  blacklists  which  entities  as  disparate  as  the  California  Highway

24  Patrol, Medicare, the California Medical Board, and Dignity Health

25  have  access  to  and  use  in  order  to  ruin  his  life  are  mere

26  speculation. The one concrete fact that Hassan advances regarding

1   the existence of a blacklist — the linking of his name to OFAC's

2   SDN List on the Corelogic credit report — has been addressed above.

3   The rest is supposition. Ultimately, Hassan's allegations regarding

4   blacklisting are too "insubstantial [for the court] to consider."

5   Cook, 775 F.2d at 1035.

6       Theories like the one advanced by Hassan have been dismissed

7   by other courts in the Ninth Circuit for lack of subject matter

8   jurisdiction under the substantiality doctrine. See, e.g., Zeiny

9   v. U.S., No. 5:12-cv-02752, 2012 WL 4845617, 2012 U.S. Dist. LEXIS

10  146571 (N.D.Cal. Oct. 10, 2012) (dismissing complaint which alleged

11  the FBI and CIA were acting in concert "to drive [plaintiff] out

12  of the country or drive him crazy as a punishment for opposing CIA

13  control of the Muslim community"); Ticktin v. CIA, No. 08-998, 2009

14  U.S. Dist. LEXIS 29693, at *9-10, 2009 WL 976517 (D.Ariz. Apr.9,

15  2009) (dismissing complaint that alleged the CIA "targeted

16  [plaintiff] for harassment and threats, interfered with his

17  employment, attempted to run him off the road, intended on a

18  separate occasion to kill him, and are currently tapping his phone

19  lines and monitoring his email.")

20      Accordingly, to the extent that the causes of action pleaded

21  in the complaint rest on allegations of secret blacklists other

22  than the SDN List, they must be dismissed for lack of subject

23  matter jurisdiction under Rule 12(b)(1).

24  **C. Medicare & the Americans with Disabilities Act**

25      With one exception, every cause of action alleged in the

26  complaint rests on the existence of the SDN List and/or other

25

secret terrorist blacklists. The exception is the following paragraph:

> Notwithstanding any procedural irregularities in the billing process caused by Plaintiff's disability and medical condition (back injury/surgeries) whether proximately caused by the blacklisting or not, Plaintiff seeks an Americans with Disabilities [a]ccomodation on an Order to Show Cause and hearing on shortened time as to why Medicare should be allowed to delay and/or refuse the payments of what is an amount of about $200,000 for services rendered, albeit billed under the conditions imposed by disability, and Plaintiff seeks an accounting thereof and an order for payment notwithstanding non prejudicial irregularities in the billing process caused by the near collapses of his businesses which was itself caused by the disability and injury inflicted 10 years ago by Officer Cooney.

(Complaint 18.) These allegations are something of a non sequitur, as they appear unrelated to the remaining allegations concerning Hassan's purported blacklisting.

To the extent Hassan is seeking Medicare reimbursements to which he believes he is lawfully entitled, he must first pursue administrative remedies with the U.S. Department of Health and Human Services. Only if he is denied may he seek judicial review of the agency's decision. Regardless of whether the plaintiff is subject to a disability (as defined by the ADA), district courts have no authority to review Medicare reimbursement decisions unless plaintiffs have first exhausted their administrative remedies. 42 U.S.C. § 405(g).

**D. No leave to amend**

To sum, the court has determined that (1) Wolfgram lacks Article III standing to maintain this action; (2) to the extent that Hassan's causes of action rest on allegations that the OFAC

SDN list is a secret blacklist, they must be dismissed for failure
to state a claim under Rule 12(b)(6); (3) to the extent that
Hassan's causes of action rest on allegations of other secret
blacklists, they must be dismissed under the doctrine of
substantiality for lack of subject matter jurisdiction under Rule
12(b)(1); and (4) to obtain Medicare reimbursement, Hassan must
first exhaust administrative remedies with the Department of Health
and Human Services before initiating judicial proceedings. This
appears to dispose of the entirety of plaintiffs' complaint.
Accordingly, the court need not reach the merits of plaintiffs'
argument that the doctrine of sovereign immunity is
unconstitutional. ("Notice of Claim of Unconstitutionality," ECF
No. 22.)

The court will not grant plaintiffs leave to amend, as it
appears that the complaint's deficiencies cannot be saved by any
amendment. <u>Leadsinger, Inc. v. BMG Music Publ'g</u>, 512 F.3d 522, 532
(9th Cir. 2008).

**E. A final note**

It is obvious that Dr. Hassan has suffered enormously since
the day in 2002 that the CHP pulled him over for speeding. As Judge
Gould noted in his dissent in <u>Hassan v. Morawsznski</u>, 405 Fed. Appx.
at 134:

> It's also worth stepping back a bit to consider how
> unusual is this case. A doctor returning home from a
> basketball game at half-time to attend to matters for a
> patient is stopped for speeding. One thing leads to
> another, and there is not only a speeding ticket but
> potentially reciprocal assaults and finally criminal
> conviction of the doctor. Add to this mix that the

1  doctor was a United States citizen, had an Arab name,
and was stopped for his speeding ticket in January 2002,
2  not long after September 11, 2001. It is also curious
that in this particular case of conflicting testimony
3  between traffic officer and citizen, the normal video
machinery of the police car was said to have
4  malfunctioned so there was no video record that might
have answered the conflicts between the testimony of the
5  officer and of Hassan.

6  Unusual, indeed. There appears to be little doubt that men with

7  surnames suggesting Islamic heritage have been unfairly stigmatized

8  in the days since September 11, 2001, oftentimes to tragic effect.

9  While Dr. Hassan's claims are not legally cognizable, and despite

10  the finality of its decision herein, the court does not lack

11  sympathy for what he seems to have undergone.

12  **V. CONCLUSION**

13  The court hereby orders as follows:

14  Plaintiffs' Complaint and the amendments thereto are

15  DISMISSED with prejudice, except that this dismissal

16  shall not operate to preclude Hassan from maintaining

17  [1] an action under the federal Fair Credit

18  Reporting Act and any other applicable state or

19  federal laws for inaccurate reporting of OFAC SDN

20  information on his consumer credit reports, and

21  [2] any administrative, and if necessary, judicial,

22  proceedings necessary to obtain Medicare

23  reimbursements to which he may be lawfully

24  entitled.

25  IT IS SO ORDERED.

26  DATED:  December 5, 2012.

LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT

28